J. N. STOCKETT, EX'r of MARGARET STOCKETT, *vs.* ETHAN A. JONES AND ELIZA ANN HIS WIFE.—*Dec.* 1838.

An account passed by the Orphans Court, making an allowance to an administrator or executor, for a claim due him from his testator or intestate, is *prima facie* evidence of the correctness of such allowance, and it rests upon the party contesting it, to outweigh the evidence by countervailing proof.

The deposition of a witness, not taken by consent or by order of the Chancellor, after the commission had been returned, and a decree to account, and an account stated by the auditor, cannot be used in the appellate court, though no exception to its admissibility was filed in the Chancery Court, as required by the act of 1832, ch. 302, sec. 5.

APPEAL from Chancery.

The bill in this cause was filed on the 18th August 1830, by *Eliza Ann Stewart* (afterwards Jones), among other mat-

ters, to vacate an allowance made to the appellant, for the board of his testatrix and her child, in his settlement with the Orphans Court of *Anne Arundel* county. The complainant was the residuary legatee of *Margaret Stockett*. The allowance was made to the appellant, in an account settled on the 28th November 1828, in his first and final account. On the 20th January 1837, the auditor stated an account, in which the allowance of the Orphans Court was rejected, and interest awarded thereon from the time of its admission in 1828. In July 1837, the defendant's counsel filed certain interrogatories to be answered by *Ann Watkins*, which were answered, and the answers filed on same day, with a memorandum *signed by the defendant's solicitor alone*, that this deposition should have the same effect as if taken under a commission. Both parties excepted to the accounts, and the Chancellor, on the 3rd October 1837, confirmed the audit. So much of the proof as is necessary to be published, will be found in the opinion of this court.

The defendant in Chancery appealed.

The cause was argued before BUCHANAN, C. J., STEPHEN, ARCHER, DORSEY, CHAMBERS and SPENCE, J.

By *Alexander* for the appellant, and
By *Randall* and *Boyle* for the appellee.

ARCHER, J., delivered the opinion of the court.

The executor of *Margaret Stockett*, the appellant in this cause, had in the Orphans Court of *Anne Arundel* county obtained a credit for the board of his testatrix and her daughter, at that time a child, from the 1st of January 1816 to the 1st of July 1822, with interest from the first of July 1822 to the 25th of November 1823, amounting to $898.63, and the bill in this case, by the residuary legatee of *Margaret Stockett*, was among other causes of complaint, filed, for the purpose of obtaining, in an account which was prayed to be taken, a recision of the above allowance. The various other matters in dispute between the parties, having been arranged by an agreement between

the solicitors of the respective parties, the only subject left for dispute was, the propriety of the credit which the executor had obtained for the above account for boarding. The account passed by the appellant in the Orphans Court was *prima facie* evidence of the correctness of the allowance, and the only question submitted to us, is, whether the evidence thus offered has been outweighed by countervailing evidence offered by the appellee.

Proof is offered of two witnesses, the sisters of the appellant, and also the sisters of *Margaret Stockett;* by one of whom it is stated, that the appellant, at the time he purchased her undivided interest in a tract of land, declared that he would say to her, as he had said to all his sisters upon purchasing their land, that while he had a home she should always be welcome to it; and by the other, that he would say to her as he had said to *Margaret Stockett* and his other sisters, that his home should always be a home to her. The bond taken by *Margaret Stockett* for the purchase money of her undivided interest in the land sold the appellant, is dated on the 11th of May 1816, and shews the purchase to have been made on that day, and was certainly calculated to induce the belief, that his sister, who was then living with him, was not to be charged with board, as she had then been living with him from the first of January preceding, and no attempt made at any deduction from the amount of the bond on account of such board. In addition to this it appears that, on the 19th of November 1821, a single bill was given by the appellant to *Margaret Stockett*, for $254.05, without any deduction for board, although his sister had been living with him at that time from the first of January 1816, nearly six years. From the aforegoing circumstances, we are inclined to think, it never was the design of the appellant to charge his sister with board, but that she was gratuitously entertained at his house.

In arriving to the above conclusion, we have discarded from our consideration the deposition of *Ann Watkins,* filed on the 20th July 1837, after the evidence had been taken, the commision had been returned, after a decree had passed for an ac-

count, and after an account had been taken by the auditor. There was no application whatever to the Chancellor for leave to take the deposition. Nor was it taken with the consent of parties. Indeed there is no evidence whatever, that the party against whom it was intended to be used, had any notice, when, where, or before whom, it was to be taken, or any notice that it was to be used as evidence in the cause, unless the mere filing might be considered as such notice. That, however, we think was not notice.

It is true, no exception was urged in Chancery against the admissibility of the deposition as evidence, but we apprehend that the act of 1832, ch. 302, sec. 5, does not apply to a case like this.

That act presupposes, that the parties will be fully aware of the evidence intended to be used against them, as they would be presumed to be in all cases where evidence was taken under commission, or any order of the Chancellor, and could not apply to a case situated as this is, and to be bound, unless exceptions in such a case were taken in Chancery, might lead to very mischievous consequences, and might enable a designing party, to make the act of assembly an engine of oppression, instead of subserving, as it was intended to do, the purposes of justice.

DECREE AFFIRMED WITH COSTS.